No. 25-7618

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

I & O, LLC,

*Plaintiff-Appellant,*

v.

TOWER KAUAI LAGOONS 9B, LLC, TOWER KAUAI LAGOONS MEZZ, LLC, TOWER KAUAI LAGOONS, LLC, KAUAI LAGOONS GRAND AVENUE PARTNERS, LLC, AND TIMBERS HAWAII REAL ESTATE LLC

*Defendants-Appellees.*

_____

On Appeal from the United States District Court for the District of Hawaii
Honorable Derrick K. Watson, United States District Judge
Civil No. 1:24-cv-00098-DKW-WRP

---

## ANSWERING BRIEF OF APPELLEES

---

STARN ● O'TOOLE ● MARCUS & FISHER
A Law Corporation

TERENCE J. O'TOOLE
MAILE S. MILLER
ERIC S. ROBINSON
733 Bishop Street, Suite 1900
Honolulu, Hawai'i  96813
Telephone:  (808) 537-6100

***Attorneys for Defendants-Appellees***
***TOWER KAUAI LAGOONS 9B, LLC, TOWER KAUAI LAGOONS MEZZ, LLC, TOWER KAUAI LAGOONS, LLC, KAUAI LAGOONS GRAND AVENUE PARTNERS, LLC, AND TIMBERS HAWAII REAL ESTATE LLC***

3503975.2

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Appellee TOWER KAUAI LAGOONS 9B, LLC is a Hawaii limited liability corporation wholly owned by Appellee TOWER KAUAI LAGOONS MEZZ, LLC, a Delaware limited liability Corporation. Tower Kauai Lagoons Mezz, LLC, is in turn wholly owned by Appellee TOWER KAUAI LAGOONS LLC, a Delaware limited liability company. Tower Kauai Lagoons LLC is in turn owned by Tower Hotels Kauai, LLC, a Hawaii limited liability company, Tower Hotel Funds, LLC, a Hawaii limited liability company, and Appellee KAUAI LAGOONS GRAND AVENUE PARTNERS, LLC, a Delaware limited liability company. Tower Hotels Kauai, LLC and Tower Hotels Fund 2014, LLC are both wholly owned by Tower Development, Inc., a Hawaii corporation. Kauai Lagoons Grand Avenue Partners LLC is owned by Kauai Lagoons CTB, LLC, a Delaware limited liability company, and Oaktree Real Estate Opportunities Fund VI, L.P., a Delaware limited partnership. There is no publicly held corporation that owns ten percent (10%) or more of the stock of any of the above entities.

Appellee TIMBERS HAWAII REAL ESTATE LLC is a Hawaii limited liability company that is wholly owned by Timbers Services Group, LLC, a Colorado limited liability company, which is in turn wholly owned by Timbers Holdings, LLC, a Delaware limited liability company.

There is no publicly held corporation that owns ten percent (10%) or more of the stock of any of the above entities.

DATED:  Honolulu, Hawaii, July 15, 2026.

/s/ Maile S. Miller
TERENCE J. O'TOOLE
MAILE S. MILLER
ERIC S. ROBINSON

Attorneys for Defendants-Appellees
TOWER KAUAI LAGOONS 9B, LLC;
TOWER KAUAI LAGOONS MEZZ, LLC;
TOWER KAUAI LAGOONS, LLC;
KAUAI LAGOONS GRAND AVENUE
PARTNERS, LLC; and TIMBERS
HAWAII REAL ESTATE LLC

# **TABLE OF CONTENTS**

Page

I.    PRELIMINARY STATEMENT .................................................................1

II.   JURISDICTIONAL STATEMENT .........................................................2

III.  STATUTORY AUTHORITIES................................................................2

IV.  STATEMENT OF ISSUES ON APPEAL .............................................5

V.   STANDARD OF REVIEW....................................................................6

VI.  CONCISE STATEMENT OF THE CASE .............................................7

      A.    Factual Background...................................................................7

      B.    Procedural History...................................................................8

VII.  SUMMARY OF ARGUMENT.............................................................9

VIII. ARGUMENT.........................................................................................9

      A.    The District Court Correctly Concluded that Appellant's Federal Securities Law Claims (Counts I and II) are Barred by the Relevant Statutes of Limitation.............................................................9

           1.    The District Court correctly found that the state of limitations period begins to run from the date of defendant's last sales-related activity, *i.e.*, offer, sale, or delivery of the security..............................................................10

           2.    The District Court correctly rejected Appellant's arguments that the statute of limitations for Count I had not even begun to run because the Contracts were executory .................................................................11

           3.    The District Court correctly rejected Appellant's attempt to "grant[] itself an open-ended limitations period" that "would never begin." ...............................................................16

i

B.      The District Court Correctly Concluded that Appellant's Federal Securities Law Claims (Counts I and II) are Barred by the Relevant Statutes of Repose. ...............................................19

       1.      The District Court correctly rejected Appellant's bona fide offering argument. ...........................................19

       2.      The District Court correctly rejected Appellant's last offered argument ....................................................21

C.      Although the District Court Assumed (Without Analyzing) for the Purposes of the Order, Appellant's Federal Securities Law Claims (Counts I and II) Also Fail Because the Contracts are not a Security ...................................................................26

       1.      The Contracts are not a "common enterprise." ........................28

       2.      Appellant was not led to expect profits solely from the efforts of others ................................................30

D.      The District Court Correctly Concluded that the Court Lacks Subject Matter Jurisdiction of Appellant's Remaining Claims Following the Dismissal of Count I and Count II of the FAC ...........34

IX.    CONCLUSION................................................................35

STATEMENT OF RELATED CASES
CERTIFICATE OF COMPLIANCE
CERTIFICATE OF SERVICE

ii

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Alunni v. Dev. Res. Grp., LLC,*
445 F. App'x 288 (11th Cir. 2011) ................................................................ 32, 33

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...................................................................................6

*BedRoc Ltd., LLC v. U.S.,*
541 U.S. 176 (2004) .................................................................................21

*Bodenburg v. Apple, Inc.,*
146 F.4th 761 (9th Cir. 2025) ....................................................................6

*Bradford v. Moench,*
809 F. Supp. 1473 (D. Utah 1992) ............................................................ 23, 24

*Branch v. Tunnell,*
14 F.3d 449 (9th Cir. 1994) .....................................................................18

*Brodt v. Bache & Co., Inc.,*
595 F.2d 459 (9th Cir. 1978) .................................................................... 28, 29

*Cal. Emp's Ret. Sys. v. ANZ Sec., Inc.,*
582 U.S. 497 (2017) .................................................................................21

*Carolina Cas. Ins. Co. v. Team Equip., Inc.,*
741 F.3d 1082 (9th Cir. 2014) ...................................................................7

*Conley v. Gibson,*
355 U.S. 41 (1957) ...................................................................................6

*Fong v. Hashimoto,*
928 Hawai'i 568, 994 P.2d 500 (Haw. 2000) ..............................................14

*Gordon v. Terry,*
684 F.2d 736 (11th Cir. 1982) ..................................................................32

iii

*Hanson v. Johnson*, No. Civ.,
  02–3709 JRTFLN, 2003 WL 21639194 (D. Minn. June 30, 2003)......................11

*Hartmann v. Cal. Dep't of Corr. & Rehab.*,
  707 F.3d 1114 (9th Cir. 2013) .................................................................................35

*Hocking v. Dubois*,
  885 F.2d 1449 (9th Cir. 1989)...................................................................... passim

*In re Bestline Products Securities & Antitrust Litigation,*
  No. MDL 162-Civ-JLK, 1975 WL 386 (S.D. Fla. Mar. 21, 1975)......................25

*In re Biozoom, Inc. Sec. Litig.*,
  93 F. Supp. 3d 801 (N.D. Ohio 2015) ....................................................................10

*In re Elec. Data Sys. Corp. "ERISA" Litig.*,
  305 F. Supp. 2d 658 (E.D. Tex. 2004) ...................................................................10

*Joyce v. Bobcat Oil & Gas, Inc.*,
  Civ. No. 1:CV–07–1421, 2008 WL 919724 (M.D. Pa. Apr. 3, 2008).................10

*Kahn v. Kohlberg, Kravis, Roberts & Co.*,
  970 F.2d 1030 (2nd Cir. 1992) ............................................................... 13, 14, 17

*Keene-Stevens v. Comm'r of the Internal Revenue*,
  72 F.4th 1015 (9th Cir. 2023)..................................................................................21

*McCullough v. Leede Oil Gas, Inc.*,
  617 F. Supp. 384 (W.D. Okla. 1985) .....................................................................10

*Meadows v. Pac. Inland Sec. Corp.*,
  36 F. Supp. 2d 1240 (S.D. Cal. 1999) ....................................................................11

*P. Stolz Family Partnership v. Daum*,
  355 F.3d 92(2d. Cir. 2004) ......................................................................... passim

*S.E.C. v. Eurobond Exchange, Ltd.*,
  13 F.3d 1334 (9th Cir. 1994) ..................................................................................29

*S.E.C. v. R.G. Reynolds Enters., Inc.*,
  952 F.2d  (9th Cir. 1991) ........................................................................ 28, 30, 31

*S.E.C. v. W.J. Howey Co.*,
  328 U.S. 293 (1946) ............................................................... 12, 27, 28, 31

*Salameh v. Tarsadia Hotel*,
  726 F.3d 1124 (9th Cir. 2013) ................................................................... 35

*SEC v. Goldfield Deep Mines Co. of Nevada*,
  758 F.2d 459 (9th Cir. 1985) ............................................................... 29, 30

*Stephenson v. Deutsche Bank AG*,
  282 F. Supp. 2d 1032 (D. Minn. 2003) ...................................................... 11

*Stone v. Fossil Oil & Gas*,
  657 F. Supp. 1449 (D.N.M. 1987)............................................................... 15

*Zakinov v. Ripple Labs, Inc.*,
  No. 18-cv-06753-PJH, 2020 WL 922815 (N.D. Cal. Feb. 26, 2020) ................. 22

### STATUTES

15 U.S.C. § 77b.................................................................................. 2, 26, 27
15 U.S.C. § 77d.................................................................................. 19, 20, 23
15 U.S.C. § 77e...................................................................................... 3, 4
15 U.S.C. § 77k .......................................................................................... 5
15 U.S.C. § 77l................................................................................... passim
15 U.S.C. § 77m................................................................................. passim
26 U.S.C. § 1031(a)(1)............................................................................... 27
28 U.S.C. § 1291 ....................................................................................... 2
28 U.S.C. § 1367........................................................................................ 2. 34
28 U.S.C. § 1331 ................................................................................... 2, 34

### RULES

Fed. R. App. P. 28(b) ................................................................................ 1
Fed. R. Civ. P. 12(d) ............................................................................... 18
Fed. R. Civ. P. 12(b)(6)........................................................................ 6, 18
Fed. R. Civ. P 8(a)..................................................................................... 6

Ninth Circuit, Cir. R. 28.............................................................................1, 38
Ninth Circuit, Cir. R. 32-1 ..............................................................................37

**OTHER AUTHORITIES**

Securities and Exchange Commission,
    Release No. 5347 .....................................................................................27

## ANSWERING BRIEF OF APPELLEES

### I.     PRELIMINARY STATEMENT

Appellees TOWER KAUAI LAGOONS 9B, LLC ("*Tower 9B*"); TOWER KAUAI LAGOONS MEZZ, LLC; TOWER KAUAI LAGOONS, LLC; KAUAI LAGOONS GRAND AVENUE PARTNERS, LLC; and TIMBERS HAWAII REAL ESTATE LLC (collectively, "*Appellees*"), by and through their undersigned counsel, hereby submit their Answering Brief pursuant to Rule 28(b) of the Federal Rules of Appellate Procedure and Rule 28-2 of the Rules of the U.S. Court of Appeals of the Ninth Circuit, and in response to the Opening Brief of Appellant I&O, LLC ("*Appellant*") [Ninth Circuit Court Docket Entry Number 9.1].

Appellees respectfully urge affirmance of the U.S. District Court for the District of Hawaii's Order (1) Granting Appellee's Motion to Dismiss without Leave to Amend, (2) Dismissing Counts I & II of the First Amended Complaint ("*FAC*") with Prejudice, and (3) Dismissing Counts III-V Without Prejudice for Lack of Supplemental Jurisdiction [District Court Entry Number ("*DE*") 61], Appellant's Excerpts of Record ("*ER*") 7-29 (the "*Order*").

This case is a breach of contract dispute arising out of Appellees' alleged nonperformance of "Post-Closing Improvements" to two condominium units that were sold to Appellant in 2019. Despite this being a breach of contract dispute under state law, Appellant alleged federal securities law claims to conjure up subject matter

jurisdiction that would not otherwise exist. Appellant's federal securities law claims did not involve securities. Moreover, even if Appellant's claims *did* involve securities, those claims are time-barred.

In seeking reversal of the District Court's Order, Appellant urges this Court to subscribe to Appellant's immortal limitations theory and ignore the weight of authority (and the fact that Congress has not acted in response to such authority). As the District Court correctly (and unequivocally) rejected these positions below, this Court should affirm the District Court's Order.

## II.     JURISDICTIONAL STATEMENT

The District Court had jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and 1367.  Jurisdiction of this Court is based on 28 U.S.C. § 1291, which governs appeals from all district court final judgments.

Judgment was entered November 17, 2025. (DE 62, ER-5-6).  Appellant timely filed a Notice of Appeal on December 3, 2025. (ER-230-233).

## III.   STATUTORY AUTHORITIES

**15 U.S.C. § 77b. Definitions; promotion of efficiency, competition, and capital formation**

**(a) Definitions**

When used in this subchapter, unless the context otherwise requires—

**(1)** The term "security" means any note, stock, treasury stock, security future, security-based swap, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization

2

certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

. . . .

**(3)** The term "sale" or "sell" shall include every contract of sale or disposition of a security or interest in a security, for value. The term "offer to sell", "offer for sale", or "offer" shall include every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value. . . . Any security given or delivered with, or as a bonus on account of, any purchase of securities or any other thing, shall be conclusively presumed to constitute a part of the subject of such purchase and to have been offered and sold for value. The issue or transfer of a right or privilege, when originally issued or transferred with a security, giving the holder of such security the right to convert such security into another security of the same issuer or of another person, or giving a right to subscribe to another security of the same issuer or of another person, which right cannot be exercised until some future date, shall not be deemed to be an offer or sale of such other security; but the issue or transfer of such other security upon the exercise of such right of conversion or subscription shall be deemed a sale of such other security. . . .

## 15 U.S.C. § 77e. Prohibitions relating to interstate commerce and the mails

### (a) Sale or delivery after sale of unregistered securities

Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—

(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such

3

security through the use or medium of any prospectus or otherwise; or

(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.

. . . .

**(c) Necessity of filing registration statement**

It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section 77h of this title.

. . . .

**15 U.S.C. § 77l. Civil liabilities arising in connection with prospectuses and communications**

**(a) In general**

Any person who—

(1) offers or sells a security in violation of section 77e of this title, or

(2) offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraphs (2) and (14) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not

4

sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,

shall be liable, subject to subsection (b), to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

. . . .

## 15 U.S.C. § 77m. Limitation of actions

No action shall be maintained to enforce any liability created under section 77k or 77l(a)(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 77l(a)(1) of this title, unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 77k or 77l(a)(1) of this title more than three years after the security was bona fide offered to the public, or under section 77l(a)(2) of this title more than three years after the sale.

## IV.   STATEMENT OF ISSUES ON APPEAL

1.    Whether the Agreements in this case are "securities" for the purposes of Appellant's Securities Act Counts in the FAC.

2.    Whether the District Court correctly granted Appellees' Motion to Dismiss Appellant's FAC because Appellant's Securities Act Counts as time-barred under the applicable statutes of limitation.

5

3.      Whether the District Court correctly granted Appellees' Motion to Dismiss Appellant's FAC because Appellant's Securities Act Counts as time-barred under the applicable statutes of repose.

## V.      STANDARD OF REVIEW

An appellate court reviews *de novo* a district court's dismissal under Federal Rules of Civil Procedure ("***FRCP***") Rule 12(b)(6) for failure to state a claim. *Bodenburg v. Apple, Inc.*, 146 F.4th 761, 767 (9th Cir. 2025). FRCP Rule 12(b)(6) authorizes district courts to dismiss a complaint that fails "to state a claim upon which relief can be granted." *See also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (dismissal is proper where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim"). FRCP Rule 12(b)(6) is read in conjunction with FRCP Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FRCP Rule 8(a)(2). To survive a motion to dismiss, plaintiff must show that its complaint contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "a court must accept as true all of the allegations contained in a complaint" that tenet "is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements do not suffice." *See id.* If dismissal is ordered, leave should be freely given to allow plaintiff

6

to amend, unless clear that the claims cannot be saved by amendment. *See Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1086 (9th Cir. 2014) (citing Fed. R. Civ. P. 15(a)(2)).

## VI.   CONCISE STATEMENT OF THE CASE

### A.   Factual Background

Following negotiations, Appellant and Appellee Tower Kauai Lagoons 9B, LLC ("*Tower 9B*") entered into a contract for the purchase of Unit 2406 ("*Unit 2406*") of the TK Resort Condominium Project in Lihue, Kauai (the "*Project*") on January 17, 2019. (ER-149-52). Appellant's contract for Unit 2406 was comprised of a Purchase Agreement and Addendum (collectively, the "*Unit 2406 Contract*"). (ER-151-52). Under the terms of the Unit 2406 Contract, Appellant agreed to pay $3,100,000.00 for the purchase of Unit 2406 and Post-Closing Improvements thereto. (ER-150-57, ER-159-62*)*. The sale of Unit 2406 closed on January 23, 2019. (ER-152).

On June 13, 2019, Appellant and Tower 9B entered into a contract for Appellant's purchase of Unit 3202 ("*Unit 3202*" and, collectively with Unit 2406, the "*Units*") in the Project. (ER-152-53). The contract for Unit 3202 was amended on July 13, 2019, and, like the Unit 2406 Contract, is accompanied by an addendum related to Post-Closing Improvements (collectively, the "*Unit 3202 Contract*" and, together with the Unit 2406 Contract, the "*Contracts*"). (ER-152-53). Under the

7

terms of the Unit 3202 Contract, Appellant agreed to pay $9,180,000.00 for the purchase of Unit 3202 and the Post-Closing Improvements thereto. *See id.* at ¶ 33. The sale of Unit 3202 closed on August 22, 2019. (ER-153).

> The Post-Closing Improvements under the Contracts include:
>
> electrical upgrades, hose bibs on the lanai, Tesla vehicle chargers with back-up power walls in the garage, water filtration systems, security systems, solar system improvements, in-unit back-up power walls, an outside parking space for oversize vehicles, a gas line extension for Unit 3202, and a front door and mechanical room relocation for Unit 2406.

(ER-150-51, ER-156-57). Pursuant to the Contracts, Tower 9B ("Seller") agreed to "cooperate with and assist Appellant to complete the Post-Closing Improvements[.]" (ER-157-58).

### B.    Procedural History

Appellant commenced the District Court litigation regarding the 2019 Contracts and 2019 purchase of the Units by filing its Complaint on February 29, 2024. (ER-237). Appellant filed its First Amended Complaint on July 8, 2024. (ER-239). Following lengthy, unsuccessful attempts at mediation, Appellees filed their Motion to Dismiss the FAC on September 9, 2025. (ER-243). Appellant's Opposition to the Motion to Dismiss was filed on October 3, 2025, and Appellees' Reply was filed on October 10, 2025. (ER-243). On October 20, 2025, the District Court elected to decide the Motion to Dismiss without a hearing, pursuant to Local Rule 7.1(c). (ER-244). The District Court issued its Order Granting the Motion to

8

Dismiss on November 17, 2025.

## VII.  SUMMARY OF ARGUMENT

The core of this appeal is whether the District Court correctly rejected Appellant's arguments that (1) the limitations period had not even begun to run because the "sale" of the Agreements would not be complete until the Post-Closing Improvements had been fully performed (Count I), and would never begin for Count II because it would be impossible to know whether Appellees would fully perform the Post-Closing Improvements; and (2) the repose period had not run because an unregistered security can never be *bona fide* offered, and that 15 U.S.C. § 77m's repose period is measured from the date a security was last offered.

## VIII.  ARGUMENT

### A.  The District Court Correctly Concluded that Appellant's Federal Securities Law Claims (Counts I and II) are Barred by the Relevant Statutes of Limitation

Assuming, *arguendo*, that the Contracts were securities,[1] Appellant's claims would be barred by the relevant statutes of limitation and statutes of repose. If Appellant purchased a "security," it did so on January 23, 2019 (when Unit 2406 closed) and on August 22, 2019 (when Unit 3202 closed). *See* (ER-152-53).

---

[1] As discussed below, Appellant's claims fail in the first instance because the Contracts are not "securities."

**1. The District Court correctly found that the state of limitations period begins to run from the date of defendant's last sales-related activity, *i.e.*, offer, sale, or delivery of the security.**

The statute of limitations for section 77l(a)(1) is one year from the date of violation (*i.e.*, offer, sale, or delivery), and begins to run regardless of whether the buyer knew of the violation. *See, e.g.*, 15 U.S.C. § 77m ("if the action is to enforce a liability created under section 77l(a)(1) of this title, unless brought within one year after the violation upon which it is based"); *In re Biozoom, Inc. Sec. Litig.*, 93 F. Supp. 3d 801, 810 (N.D. Ohio 2015); *In re Elec. Data Sys. Corp. "ERISA" Litig.*, 305 F. Supp. 2d 658, 680 (E.D. Tex. 2004) ("Congress chose not to include a discovery rule for suits brought under § 77l(a)(1)."); *Joyce v. Bobcat Oil & Gas, Inc.*, Civ. No. 1:CV–07–1421, 2008 WL 919724, at *10 (M.D. Pa. Apr. 3, 2008) (the limitations period for a 77l(a)(1) claim "begins to run 'from the date of the violation regardless of whether the plaintiff knew of the violation'" (quoting *Pell v. Weinstein*, 759 F. Supp. 1107, 1111 (M.D. Pa. 1991)); *see also* (ER-17).[2] For unregistered

---

[2] There is no discovery rule in 15 U.S.C. § 77m with respect to § 77l(a)(1) claims. *See McCullough v. Leede Oil Gas, Inc.*, 617 F. Supp. 384, 387 (W.D. Okla. 1985) ("With respect to § 12(1) claims, it is clear and unequivocal that an action must be "brought within one year after the violation upon which it is based." 15 U.S.C. § 77m. Had Congress intended that this limitation be subject to equitable tolling, it could have included the discovery rule utilized in the limitation provision applicable to § 11 and § 12(2) claims. The legislative message is clear; by including a discovery rule limitation for certain classes of claims but omitting it for nonregistration claims, in the very same statutory provision, Congress clearly reflected its intent to prohibit application of the discovery rule to § 12(1) nonregistration claims. This Court

10

securities claims under 15 U.S.C. § 77l(a)(1) (Count I), a violation occurs when a buyer actually purchases the security. Courts reason that a seller of securities cannot conceal the fact that it has not registered a security because the registration of securities is a matter of public record. *See, e.g.*, *Hanson v. Johnson*, No. Civ. 02–3709 JRTFLN, 2003 WL 21639194, at *4 (D. Minn. June 30, 2003) ("it is impossible to conceal the fact that a security is not registered"). Thus, the statute of limitations on Appellant's unregistered securities claim ran on August 22, 2020, and was already time-barred for several years before it filed suit.

> **2.** **The District Court correctly rejected Appellant's arguments that the statute of limitations for Count I had not even begun to run because the Contracts were executory.**

In determining when a sale of a security occurred for the purpose measuring the one-year limitations period under 15 U.S.C. § 77m, "[t]he relevant inquiry is on which of the defendants' activities—offer, sale, or delivery—occurred last[.]" *Stephenson v. Deutsche Bank AG*, 282 F. Supp. 2d 1032, 1064 (D. Minn. 2003) (citing *Doran v. Petroleum Mgmt. Corp.*, 576 F.2d 91, 93 (5th Cir. 1978)); *see also Meadows v. Pac. Inland Sec. Corp.*, 36 F. Supp. 2d 1240, 1244 (S.D. Cal. 1999) ("Giving broad effect to the language in the 1933 Act, as is required, an unregistered security is 'sold' for the purposes of 12(1) [(*i.e.*, 15 U.S.C. § 77l(a)(1))] liability

---

refuses to do what Congress declined to do in enacting § 13 [(Section 13 refers to § 13 of the Securities Act of 1933, which is codified as 15 U.S.C. § 77m)].").

11

when the last integral act of the sale is completed, including payment for and delivery of the securities."). Appellant concedes in the FAC that "legal title to the underlying Units has already passed to [Appellant]" and that "the closing of the sale transaction (i.e., the passing of title from [Tower] 9B to [Appellant])" has already occurred. (ER-176-77). Both the sale and delivery were completed at closing.

Appellant offered no legal authority for its proposition that "record[ing] amendments" to the Project's governing documents (*i.e.*, Covenants, Conditions, and Restrictions; Condominium Declaration; quitclaim deed for common elements; and an Amended Developer's Public Report) constitutes an offer (or a sale or delivery) of a security. *See* (ER-176-77). None of these documents come remotely close to meeting the definition of a security or satisfying the *Howey* test. *See S.E.C. v. W.J. Howey Co.*, 328 U.S. 293 (1946). Nor has Appellant shown how the recording of such documents constitutes an offer, sale, or delivery (indeed, it is none of these things). Moreover, under Appellant's own allegations, a majority of the documents Appellant tossed up were "executed, delivered, and recorded" more than one year before Appellant filed its Complaint. *See* (ER-177). The District Court agreed. (ER-24-25).

Appellant alleged that the "Agreements will remain executory contracts until such time as Defendants complete the Post-Closing Improvements[,]" and, as a result, a "sale has not occurred until the Agreements are fully performed." (ER-176).

12

That argument fails because the Agreements are not executory. Where a party is "bound to perform under the terms of [a] contract . . . and [plaintiff] could have sued [defendant] for breach if it failed to perform[,]" a contract is no longer executory. *See Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1041 (2nd Cir. 1992) ("Similarly, plaintiffs argue that the agreement is executory and that the statute of limitations on an executory contract does not begin to run until the contract becomes non-executory. Plaintiffs are not correct. The contract was not executory as KKR was bound to perform under the terms of the contract, the Board was bound to perform once KKR had performed, and the Board could have sued KKR for breach if it failed to perform.").

Here, Appellant alleged (in support of its breach of contract claim in Count IV) that "Defendants breached the Agreements . . . by, among other things, failing to provide the Post-Closing Improvements to Unit 2406, by failing to provide the Post-Closing Improvements to Unit 3202, and by failing to provide the Parking and Storage Improvements." (ER-183). In order to have breached the Agreements, Appellees must have been bound to perform. When Appellant received title for the Units (on January 23, 2019, for Unit 2406 and on August 22, 2019, for Unit 3202), Tower 9B became bound to perform under the terms of the Agreements, and any sale was completed. Thus, under Appellant's own allegations, Appellees were bound

13

to perform the Post-Closing Improvements and the Agreements were therefore not executory.

In an attempt to vault over the time bar of the statute of limitations, Appellant alleged that the Purchase Agreements and Addenda "will remain executory contracts" until the Post-Closing Improvements are completed, and therefore the sale of a security "has not been completed[.]" (ER-176, ER-178). Under Hawaii law, a real estate contract, the type of contract at issue here, is only executory until legal title is transferred (with equitable title to the real property transferring at the time of execution). *See Fong v. Hashimoto*, 928 Hawai'i 568, 575-76, 994 P.2d 500, 507-08 (Haw. 2000) (discussing the rights of vendor under an agreement of sale for real property during the "executory period" while the vendor "merely retains bare legal title."). The Second Circuit rejected a similar "executory contract" argument in *Kahn v. Kohlberg, Kravis Roberts & Co.*, finding that "[t]he contract was not executory as [defendant] was bound to perform under the terms of the contract . . . and [plaintiff] could have sued [defendant] for breach if it failed to perform." *See* 970 F.2d 1030, 1041 (2nd Cir. 1992) (applying 15 U.S.C. § 77m's statute of limitations and statute of repose in an Investment Advisers Act action). Here, with respect to the Post-Closing Improvements, Tower 9B was bound to perform after closing, and Appellant's claim, if any, is a Breach of Contract claim.

14

The District Court rejected Appellant's arguments, finding that, "[Appellant's] logic with respect to the timing of its claims – while having the obvious convenience of prolonging the accrual of the same for the greatest possible period – is absurd." (ER-17). It further noted that "[t]he only case cited in support of I&O's far-fetched theory of accrual is *Stone v. Fossil Oil & Gas*, 657 F. Supp. 1449 (D.N.M. 1987)." (ER-18, n.6). In *Stone*, the plaintiff sought to purchase unregistered securities. 657 F. Supp. at 1456. The court found "that the check sent . . . by Plaintiff to [a defendant] in response to [their] solicitation of buyers for Fossil stock constituted an offer by Plaintiff to purchase stock." *See id.* The court further found that a "sale was not consummated for the purposes of the statute of limitations[,]" reasoning that it was "clear that Plaintiff's offer to purchase was subject to certain conditions[,]" including defendant's "need to secure data regarding Mr. Stone's financial condition before he could become an authorized purchaser of the unregistered securities which were the subject of the offering." *See id.* The "actual sale of securities" in *Stone* took place when plaintiff "agreed to take delivery of unregistered stock[.]" *See id. Stone* is distinguishable from the instant case, in that delivery (whether of the Contracts themselves or title to the Units at closing) occurred several years prior to Appellant filing its Complaint.

15

**3.    The District Court correctly rejected Appellant's attempt to "grant[] itself an open-ended limitations period" that "would never begin."**

Appellant's misrepresentations in securities offerings claim (15 U.S.C. § 77l(a)(2)) is also time-barred by 15 U.S.C. § 77m's one-year statute of limitations. "No action shall be maintained to enforce any liability created under section . . . 77l(a)(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence[.]"15 U.S.C. § 77m. Assuming, *arguendo*, that the "false and misleading statements" alleged by Appellant (ER-173) were true and actionable, Appellant knew, or should have known, of the untrue statements by no later than March 24, 2022, when it began alleging that it "would not have purchased Unit 2406 and 3202" but for "[Tower 9B's] commitment to timely provide I&O, LLC with additional parking and storage spaces and make additional post-closing improvements to both units[.]" (ER-165-67, ER-173). Appellant's dispute notice, sent on May 23, 2022, again highlights Appellees' alleged failures regarding the Post-Closing Improvements. *See* (ER-33-34, ER-167). Thus, Appellant's claims are barred by the one-year statute of limitations under 15 U.S.C. § 77m.

As with Appellant's executory contract argument, the District Court rejected Appellant's open-ended limitations arguments as absurd. (ER-20). In so finding, the District Court noted that the "alleged facts paint a clear picture" and that "[a]t the

16

very least, then, I&O knew of Defendants' failures and alleged misrepresentations of timely performance long before February 2023—the one-year point prior to the initiation of this action." (ER-21). Count II was thus "untimely under Section 77m's one-year statute of limitations" and the District Court further rejected Appellant's "obvious gimmick to preserve otherwise untimely claims." (ER-22, n.8).

Appellant's March 24, 2022, email was effectively a declaration that Appellant knew Defendant was not planning to perform. Even if it wasn't a declaration, Appellant should have known of the alleged misrepresentation after stating in the March 24, 2022, email that "It ha[d] been over three (3) years since the Unit 2406 closing and over two and a half (2 ½) years since the Unit 3202 closing, and not much has happened. Nothing has happened since our last October 22, 2021 call." *See* (ER-165-67); *see also Kahn*, 970 F.2d at 1042 ("Discovery takes place when the plaintiff obtains actual knowledge of the facts giving rise to the action or notice of the facts, which in the exercise of reasonable diligence, would have led to actual knowledge.").

Moreover, Appellant's May 23, 2022, Dispute Notice is a definitive declaration by Appellant that it knew (or at least believed) Defendant was not planning to perform." *See* (ER-32-34); *see also* (ER-167). The express purpose of Appellant's May 23, 2022, Dispute Notice—sent more than one year before Appellant filed its Complaint—was "to notify [Appellees] of a dispute by I & O,

17

LLC concerning Timbers' failure to timely and properly complete its obligations under the Purchase Agreements for Units 2406 and 3202 of the TK Resort Condominium relating to the Post-Closing Improvements." *See* (ER-33).[3] The Dispute Notice closes by stating that:

> If we do not come to a satisfactory resolution by June 6, 2022, then . . . this Dispute Notice will constitute a demand for Discussion (by Zoom) in accordance with to [*sic*] Section J.16.d. of the TK Resort Agreement portion of the Purchase Agreements[.]

*Id.* at 2.

Section J.16.d of the TK Resort Agreement portions of the Purchase Agreements for each Unit provides:

> d.    Discussion. Any person with a Dispute shall notify the party to whom the Dispute is directed in writing of the Dispute, which writing shall describe the nature of the Dispute and any proposed remedy (the "**Dispute Notice**").

---

[3] Generally, the District Court may not consider matters outside the pleadings when considering a 12(b)(6) motion. Fed. R. Civ. P. 12(d). When such matters are presented, such motions are usually converted to a motion for summary judgment. Fed. R. Civ. P. 12(d). However, documents whose contents are alleged in a complaint and whose contents cannot reasonably be questioned, but which are not physically attached to the pleading, may be considered in a 12(c) motion, and does not convert the motion into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (citation omitted). Appellant's May 23, 2022, Dispute Notice is referenced in paragraph 58 of the FAC. *See* (ER-167).

(ER-60[4] (emphasis in original), ER-88[5] (emphasis in original)). Section J.16.b. of the Agreements defined "Dispute" as "any and all actions, claims, or disputes between or among the parties with respect to, arising out of, or relating to this Purchase Agreement" of more than $3,500 and excluding construction defects. (ER-60, ER-88).

Appellant's May 23, 2022, Dispute Notice provided notice (and shows knowledge) of Appellant's dispute related to the Post-Closing Improvements and, by invoking section J.16.d. of the Purchase Agreements was plainly intended as satisfying the notice required before Appellant could institute litigation. *See* (ER-61 (§ J.16.e(iv)); (ER- 89 (§ J.16.e(iv)).

**B.** **The District Court Correctly Concluded that Appellant's Federal Securities Law Claims (Counts I and II) are Barred by the Relevant Statutes of Repose**

**1.** **The District Court correctly rejected Appellant's bona fide offering argument.**

As the Second Circuit discussed in *P. Stolz*, Professor Loss, the "co-author of an authoritative treatise on securities regulation also [(*i.e.*, in addition to the cases cited by the Court)] interpreted bona fide to mean genuine, and not legal, in the context of dealer exemption in 15 U.S.C. § 77d[.]" 355 F.3d at 99 (citing L. Loss &

---

[4] The Unit 2406 Purchase Agreement is referenced in paragraphs 29 and 69 of the FAC. *See* (ER-151-52, ER-171).
[5] The Unit 3202 Purchase Agreement is referenced in paragraphs 32 and 69 of the FAC. *See* (ER-152-53, ER-171).

J. Seligman, SECURITIES REGULATION, § 2-B-6, n.285 (3d ed. 1996)). The Second

Circuit went on to quote the treatise, which provides:

> The phrase bona fide certainly does not refer to a legal offering. It was obviously copied from the original § 4(1), where the single clause that in 1954 became Clauses (A) and (B) excepted "transactions within one year after the first date upon which the security was bona fide offered to the public by the issuer or by or through an underwriter." The "bona fide" phrase was the drafter's device for ensuring, as now provided specifically in Clause (B), that the prospectus-delivery requirement should apply for an entire year from the date of the *first genuine rather than simulated offering to the public.* In other words, the emphasis was on "public" and not "first."

*Id.* The Second Circuit went on to find that the plaintiff "presents no good reason

why 'bona fide' should not have the same meaning [as it does in 15 U.S.C. § 77d]

as it does in § 13 [(codified as 15 U.S.C § 77m)]." *Id.* (citing *Gustafson v. Alloyd*

*Co.*, 513 U.S. 561, 570 (1995) with the explanatory parenthetical "ruling that

identical terms in different parts of the 1933 Act are intended to have the same

meaning—in the context of term 'prospectus'"). The Second Circuit relied on

Professor Loss's treatise, as well as an abundance of case, and *amicus* briefing from

the Securities and Exchange Commission in reaching its holding. To adopt

Appellant's interpretation of "bona fide offered" would render § 77m's statute of

repose surplusage and would require finding that identical terms in the same act (§

77m and § 77d) have different meanings, both of which would lead to "an absurd

result" of unregistered securities never being subject to the statute of repose. *See P.*

*Stolz*, 355 F.3d at 99.

20

Appellant seeks to render 15 U.S.C. § 77m's statute of repose language surplusage in § 77l(a)(1) claims. Under Appellant's logic unregistered securities would never be subject to the statute of repose because, by definition, they would never be registered, which would effectively exempt unregistered securities from the statute of repose. 15 U.S.C. § 77m provides, in relevant part, that "In no event shall any such action be brought to enforce a liability created under section . . . 77l(a)(1) of this title more than three years after the security was bona fide offered to the public[.]" Had Congress intended to exempt unregistered securities from the statute of repose, it could have done so. Congress did not. The language of the statute is there for a reason—to provide a statute of repose for § 77l(a)(1) claims. *Cf. BedRoc Ltd., LLC v. U.S.*, 541 U.S. 176, 183 (2004) ("The preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what it says there."); *Keene-Stevens v. Comm'r of the Internal Revenue*, 72 F.4th 1015, 1026 (9th Cir. 2023) (same). The District Court agreed, noting that the U.S. Supreme Court in *Cal. Pubc. Emp's Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 505-06 (2017) was clear that there were no exceptions to the statute of repose. (ER-22-23).

      2.     **The District Court correctly rejected Appellant's last offered argument.**

The applicable three-year repose period for Appellant's unregistered securities claim (Count I) begins from the date the security is first offered to the

public. *See, e.g.*, *P. Stolz Fam. P'ship L.P. v. Daum*, 355 F.3d 92, 100-06 (2nd Cir. 2004) (§ 77m's "'bona fide offered to the public' refers to the time when the stock is initially bona fide offered to the public."); *Zakinov v. Ripple Labs, Inc.*, No. 18-cv-06753-PJH, 2020 WL 922815, at *8 (N.D. Cal. Feb. 26, 2020) (following *P. Stolz*). At latest, the date that the alleged securities were offered to the public was the date Appellant entered into the contracts for the purchase of Unit 2406 (January 17, 2019) and Unit 3202 (June 7, 2019). *See* (ER-151-53).

Even if Appellant's executory contract argument could overcome the statute of limitations for its unregistered securities claim (it cannot), Appellant's claim is still barred by the statute of repose. Appellant alleged that:

> [Appellant's] claim is within . . . the three-year statute of repose. . . . The three-year period running from the date when the security is bona fide offered to the public has also not commenced because Defendants have not complied with the registration requirement and therefore there has not yet been any bona fide offering to the public.

(ER-178). Under Appellant's logic, unregistered securities would never be subject to the statute of repose because, by definition, they would never be registered. It "is true that, in the case of registered securities, the date of registration has been treated as the date that starts the running of the repose period[.]" *P. Stolz*, 355 F.3d at 99 (citations omitted). In the case of unregistered securities, the relevant question "is when was the stock really and truly (genuinely) being offered to the public, as opposed to, say, a simulated offering." *Id.* The weight of authority has found that a

22

"bona fide" offer refers to the genuineness of the offer to the public. *See, e.g.*, *P. Stolz*, 355 F.3d at 99. The Second Circuit Court in *P. Stolz* opined:

> We believe, however, that the registration is merely the manifestation of the underlying test: the genuineness of the offer to the public. The relevant question for § 13 [(15 U.S.C. § 77m)] is when was the stock really and truly (genuinely) being offered to the public, as opposed to, say, a simulated offering. Obviously, such an interpretation makes considerable sense in the context of unregistered securities.
>
> In contrast, adopting Stolz's argument means, as appellants readily acknowledge, that unregistered securities would never be subject to the three-year repose period because, by definition, they would never be registered. This would be an absurd result, and Stolz's arguments to the contrary are unconvincing. Additionally, the majority of courts and commentators to consider this issue agree with us. *See, e.g.*, *Kubik v. Goldfield*, 479 F.2d 472, 475 (3d Cir.1973) (finding that stock is bona fide offered when genuinely offered to public, even if unregistered, but in context of dealer exemption under 15 U.S.C § 77d); *Slagell v. Bontrager*, 616 F. Supp. 634, 636-37 (W.D. Pa. 1985) (finding in dictum that bona fide means genuinely offered); *Sowell v. Butcher & Singer, Inc.*, No. 84–0714, 1987 WL 10712, at *8 (E.D. Pa. May 13, 1987) (finding "bona fide" in § 13 is to be interpreted in a fashion similar to dealer exemption and means "genuine"); *but see Bradford v. Moench*, 809 F. Supp. 1473, 1486–87 (D. Utah 1992) (finding that unregistered securities could never be "bona fide offered to the public").

*Id.*

Appellant hangs its hat on a sole Utah district court opinion, *Bradford v. Moench*, 809 F. Supp. 1473 (D. Utah 1992), and its dearth of progeny, in arguing that the "bona fide offer to the public" language in the statute of repose does not apply to unregistered securities. *See* (ER-177-78). No appellate court has agreed

23

with *Bradford*'s interpretation (which would nullify the language of 15 U.S.C. § 77m).

Appellant further eschews the weight of authority, arguing that the phrase "bona fide offered to the public" means when a security was *last* offered to the public. *See* (ER-178). In *P. Stolz*, the Court was presented with the first bona fide offer versus last bona fide offer issue, and "requested and received briefing from the [SEC] as *amicus curiae*." 355 F.3d 100 (emphasis in original). The Court went on to discuss that, the vast majority of courts have found that the three-year repose period "begins when the security is *first* bona fide offered." *Id.* at 100-01 (emphasis in original) (citing more than 15 cases). The Court went on to observe that "most leading commentators" interpret the repose period as starting from the first bona fide offering. *See id.* at 101-02. After noting the paucity of courts (three to be exact) adopting the last offered approach, the Court devoted nearly five pages of analysis before holding:

> [W]e are bound by the apparent intent of Congress that Section 13's [(15 U.S.C. § 77m's)] "bona fide offered to the public" refers to the time when the stock is ***initially bona fide offered*** to the public. We are therefore ***in agreement with the SEC and the majority of courts*** and commentators that have spoken to the issue.

*Id.* at 106 (emphasis added).

Appellant's misrepresentation in securities offering claim (Count II) is similarly barred by the statute of repose under 15 U.S.C. § 77m, which provides that

24

"[i]n no event shall any such action be brought to enforce a liability created . . . under section 77l(a)(2) of this title more than three years after the sale. Appellant's misrepresentation in securities offering claim was brought "more than three years after the sale"—the sale of the alleged securities closed in 2019. *See* 15 U.S.C. § 77m. Thus, the three-year statute of repose ran in 2022. *See id.*

Notwithstanding the doubt of some of the commentators cited in *P. Stolz*, those commentators nevertheless agreed that the first offered interpretation is correct:

- "While this result is ridiculous, it seems to be what the statute says." *P. Stolz*, 355 F.3d at 100 (quoting R. Jennings, et al., SECURITIES REGULATION 1318 (8th ed. 1998).

- "[I]n the case of a slow offering, it is conceivable that the cause of action would be foreclosed before it even arises. While the wisdom of this result has been questioned . . ., the generally accepted rule is that the three year repose period is unconditional. . . ." *Id.* at 101 (quoting T. Hazen, THE LAW OF SECURITIES REGULATION § 7.10, at 666 (4th ed. 2002)).

The Second Circuit then analyzed *In re Bestline Products Securities & Antitrust Litigation,* No. MDL 162-Civ-JLK, 1975 WL 386 (S.D. Fla. Mar. 21, 1975), noting that:

> *Bestline* and its progeny express concern about the securities offeror who, while making his ongoing bona fide offer of unregistered

25

securities to the public, manages to avoid suit for three years, thus securing a sort of immunity to continue illicit offers without civil liability. This, of course, is not the situation before us in the present case. Admittedly, such a prospect, however remote, is not one to be desired, but, in any event, does not violate, as the plaintiffs argue, the "remedial" purpose of the Act.

*P. Stolz*, 355 F.3d at 103 (citations omitted). The Second Circuit then went on to note that although "all statutes of limitation or repose always tend to cut against the remedial results that plaintiffs might otherwise enjoy . . . the remedial results may best be furthered . . . by lengthening the period before repose takes effect." *P. Stolz*, 355 F.3d at 103-04. In the twenty-two years since the *P. Stolz* decision, Congress has not lengthened the repose period for § 77l(a)(1) claims. *Cf. id.* at 104 (noting that Congress extended the repose period for securities fraud in the Sarbanes Oxley Act).

**C.** **Although the District Court Assumed (Without Analyzing) for the Purposes of the Order, Appellant's Federal Securities Law Claims (Counts I and II) Also Fail Because the Contracts are not a Security**

The District Court assumed, for the purposes of the Order, that a security existed, and thus did not decide whether a security actually existed. (ER-16). No security exists in this matter. The threshold question for claims alleging violations of 15 U.S.C. §§ 77l(a)(1) and 77l(a)(2) is whether a "security" exists. The definition of "security" includes "investment contracts." *See* 15 U.S.C. § 77b(a)(1) ("The term 'security' means any . . . investment contract . . . ."). Appellant alleges (and thus concedes) that the sole type of security that *could* exist in this case is an investment

26

contract. *See* (ER-168-170, ER-174) ("The Unit 2406 Purchase Agreement, the Unit 2406 Addendum, the Unit 3202 Purchase Agreement, and the Unit 3202 Addendum . . . constitute 'investment contracts' and thus constitute 'securities' as defined by . . . 15 U.S.C. § 77b(a)(1)."). The U.S. Supreme Court, in *S.E.C. v. W.J. Howey Co.*, set forth a three-part test for determining whether there is an "investment contract" within the meaning of "security." 328 U.S. 293 (1946). An investment contract signifies a "contract, transaction, or scheme whereby a person [(1)] invests his money [(2)] in a common enterprise and [(3)] is led to expect profits solely from the efforts of the promoter or third party[.]" *Id.* at 298-99. Assuming, *arguendo*, that Appellant's purchase of Unit 2406 and/or Unit 3202 constituted investing money,[6] Appellant still fails to meet the second and third elements of the *Howey* test.

---

[6] Appellant alleged that a "1031 Exchange Cooperation" clause in the addenda to the Contracts supersedes the Contracts' original language and so, "by definition, Appellant must have been purchasing the Units for investment rather than personal purposes." *See* (ER-171-72) ("Purchaser further agrees and acknowledges that Purchaser has not been induced nor solicited by Seller or its Agents to purchase the Unit as a '**security**' . . . . Purchaser represent[s] that the Unit is being purchased for personal use and enjoyment and not because of any financial or monetary advantage . . . ." (emphasis in original)). First, only Unit 2406 was purchased as part of a 1031 Exchange. *See* (ER-172). Second, the presence of a 1031 exchange does not, *ipso facto*, mean real estate is an investment or part of an investment contract. *See* 26 U.S.C. § 1031(a)(1) (1031 exchanges may be used where "real property is exchanged solely for real property of like kind which is to be held either for productive use in a trade or business or for investment.").

Appellant further alleged that, pursuant to Securities and Exchange Commission, Release No. 5347, Guidelines as to the Applicability of the Federal Securities Laws to Offers and Sales of Condominium or Units in a Real Estate Development, 1 Fed. Sec. L. Rep. (CCH) (1973): "[T]he offering of condominium

### 1. The Contracts are not a "common enterprise."

Under the second element of the *Howey* test, a transaction must be part of a "common enterprise" in order to be an investment contract. *W.J. Howey Co.*, 328 U.S. at 298-99. A common enterprise requires either (1) horizontal commonality or (2) vertical commonality. *See, e.g.*, *S.E.C. v. R.G. Reynolds Enters., Inc.*, 952 F.2d 1130 (9th Cir. 1991). "The Ninth Circuit accepts either traditional horizontal commonality or, when no pooling among investors is present, a strict version of vertical commonality." *Hocking v. Dubois*, 885 F.2d 1449, 1459 (9th Cir. 1989) (en banc), *cert. denied*, 494 U.S. 1078 (1990). Horizontal commonality has been defined as "an enterprise common to a group of investors" (*R.G. Reynolds Enters., Inc.*, 952 F.2d at 1130 (citing *Hocking*, 885 F.2d at 1455)) and as the "pooling of interests [(*i.e.*, investments)], usually combined with a pro-rata sharing of profits" (*Brodt v.*

---

units in conjunction with any one of the following will cause the offering to be viewed as an offering of securities in the form of investment contracts: 1. The condominiums, with any rental arrangement or other similar service, are offered and sold with emphasis on the economic benefits to the purchaser to be derived from the managerial efforts of the promoter […] 2. The offering of participation in a rental pool arrangement; and 3. The offering of a rental or similar arrangement whereby the purchaser must hold his unit available for rental for any part of the year, must use an exclusive rental agent or is otherwise materially restricted in his occupancy or rental of his unit." (ER-169-70) (alterations in original). No such facts are alleged or present. Indeed, Appellant does not allege that it participates in a rental pool, was offered a rental pool agreement along with the Contracts, or was restricted in his occupancy of the Units. *Cf.* (ER-150) ("Owners are permitted to use their units for personal purposes, and may also offer their units as short-term (vacation) or long-term rentals through the Defendants' rental pool.").

*Bache & Co., Inc.*, 595 F.2d 459, 460 (9th Cir. 1978)). "Vertical commonality may be established by showing 'that the fortunes of the investors are linked with those of the promoters.'" *Id.* (quoting *SEC v. Goldfield Deep Mines Co. of Nevada*, 758 F.2d 459, 463 (9th Cir. 1985); *see also S.E.C. v. Eurobond Exchange, Ltd.*, 13 F.3d 1334, 1338-39 (9th Cir. 1994); *Brodt v. Bache & Co., Inc.*, 595 F.2d at 460 (observing that "[t]his Court has defined 'common enterprise' as one in which the 'fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment or of third parties.'" (quoting *SEC v. Glenn W. Turner Enters., Inc.* 474 F.2d 476, 482 n.7 (9th Cir. 1973)).

Horizontal commonality does not exist in the instant case. Appellant does not allege that it purchased either of the Units combined with a rental pool agreement or that Appellant ever entered into a rental pool agreement with Appellees. Nor does Appellant even allege any sort of agreement wherein Appellees manage the Units. On the contrary, Appellant alleges only that owners "may also offer their units as short-term (vacation) or long-term rentals through Appellees' rental pool." *See* (ER-150). The Ninth Circuit, in *Hocking*, noted that the "simple purchase of real estate lacks any horizontal commonality, as no pooling of interests or profits is involved." *Id.* The Court went on to observe that the "purchase of real estate ***combined with*** a[ rental pool agreement]" does evidence horizontal commonality. *See Hocking*, 885

29

F.2d at 1459. (emphasis added). In making its observation, the Ninth Circuit reasoned that:

> The participants pool their assets; they give up any claim to profits or losses attributable to their particular investments in return for a pro rata share of the profits of the enterprise; and they make their collective fortunes dependent on the success of a single common enterprise.

*Id.*

Nor is there vertical commonality, *i.e.*, "an enterprise common to an investor and the seller, promoter, or some third party." *See R.G. Reynolds Enters., Inc.*, 952 F.2d at 1130 (citing *Hocking*, 885 F.2d at 1455). Here, the fortunes of Appellant are not linked to those of Appellees. *See S.E.C. v. Goldfield Deeps Mines Co. of Nevada*, 758 F.2d at 463. Appellant alleges that it "expected to realize 'profits' . . . in the form of appreciation in value of the Units . . . and possible rental income." *See* (ER-172). The appreciation in value of the Units does not affect the fortunes of Appellees. Such appreciation would only benefit Appellant. Similarly, Appellant's hypothetical "possible rental income" does not impact and is not linked to Appellees' fortunes, particularly where Appellant and Appellees have not entered into a rental management agreement or rental pooling agreement.

### 2. Appellant was not led to expect profits solely from the efforts of others.

The third element of the *Howey* test, which must also be met, "requires an expectation of profits produced by the efforts of others." *R.G. Reynolds Enters., Inc.*, 952 F.2d at 1131. "This requirement is met when the efforts made by those other

30

than the investor are undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." *Id.* (internal quotations omitted) (quoting *Hocking*, 885 F.2d at 1455; *SEC v. Glenn Turner Enters., Inc.*, 474 F.2d at 482). Here, the supposed "enterprise" between Appellant and Appellees is the "realiz[ation of] 'profits' . . . in the form of appreciation in value of the Units . . . and possible rental income." *See* (ER-172).

Assuming for the sake of argument that an enterprise exists, Appellees' efforts are not "undeniably significant ones, those managerial efforts which affect the failure or success of the enterprise." *See R.G. Reynolds Enters., Inc.*, 952 F.2d at 1131. Indeed, Appellees' efforts will not affect an appreciation in value—such appreciation (or depreciation) is caused by the broader real estate market. Appellant did not allege (and it could not in good faith allege) that it expected Unit 2406 and Unit 3202 to appreciate *solely* from the efforts of Appellees. *See, e.g., S.E.C. v. W.J. Howey Co.*, 328 U.S. at 298-99. Appellant has the power to control the completion of the Post-Closing Improvements and profitability of Unit 2406 and Unit 3202. *See, e.g.*, (ER-159-62) (section 3.1 (4.1) of the Contracts providing that "third party consultants that may be required will be retained by Purchaser"; section 3.3 (4.3) of the Contracts providing that "Purchaser understands and agrees that any such contracts for third party services shall be engaged by the Purchaser"; and section 5

31

(6) of the Contracts providing that Seller and Purchaser must work in conjunction "to cause all of the Post[-]Closing Improvements" to be completed).

Appellees' efforts with respect to the Post-Closing Improvements are wholly dependent on Appellant's active participation and efforts. *See, e.g.*, (ER-157-62) ("Seller and Purchaser shall cooperate and work together . . ."; "Purchaser and Seller shall work together . . ."; "At Purchaser's request, Seller shall . . ."; "At Purchaser's request, Seller shall . . ."; "At Purchaser's request, Seller, at Seller's cost, shall . . ."; and "Seller shall . . ."). Appellant was actively involved in designing the units to cater to Mr. Sukumar's specific, personal taste. *See, e.g.*, (ER-150-53). Indeed, Appellant even alleges the "important" Post-Closing Improvements stemmed from the "unique requirements of Mr. Sukumar's sincerely held religious, spiritual, and health beliefs, which extend to multiple aspects of his personal and business dealings." *See* (ER-151, ER-163).

In applying the *Howey* test, Courts "look to the economic reality, focusing on the dependency of the investor on the entrepreneurial or managerial skills of a promoter or other party." *Alunni v. Dev. Res. Grp., LLC*, 445 F. App'x at 296 (quoting *United States v. Wetherald*, 636 F.3d 1315, 1325 (11th Cir. 2011)). An investor with the power to control the profitability of his investment is "not dependent upon the managerial skills of others." *Gordon v. Terry*, 684 F.2d 736, 740 (11th Cir. 1982). "The fact that the investor has delegated management duties or has

chosen to rely on some other party does not establish dependency. The investor must have no reasonable alternative to reliance on that person." *Alunni*, 445 F. App'x at 296. Even if the developer does provide certain management services or a pool of potential renters, that arrangement does not necessarily rise to the level of "dependence" required. *Hocking v. Dubois*, 885 F.2d 1449, 1462 (9th Cir. 1989); *Alunni*, 445 F. App'x at 296. Here, there is no "dependence."

With respect to the "economic reality" here, as made clear from the language of the Agreements, is that Appellant controls the Units and whether (or not) the Post-Closing Improvements are completed. *See Alunni v. Dev. Res. Grp., LLC*, 445 F. App'x 288, 296 (11th Cir. 2011) (in applying the *Howey* test, courts "look to the economic reality, focusing on the dependency of the investor on the entrepreneurial or managerial skills of a promoter or other party"). Indeed, as alleged by Appellant, it is required to, among other things, retain third party consultants (ER-159-60) and engage third party services (ER-160-62). In contrast, Tower 9B's performance is to work with Appellant, as and when requested by Appellant. (ER-157-62). This is not an economic reality of Appellant's dependence on Appellees. The management of the Units, the Post-Closing Improvements, and whether Appellant rents the Units are all dependent on Appellant.

Moreover, Appellant's allegations that the Agreements (but not the Units themselves) are a security are incorrect. The Units are the key component of the

33

Agreements and are, by Appellant's own allegations, what "[Appellant] expected to realize 'profits' from . . . in the form of appreciation in value *of the Units* incident to the Post-Closing Improvements[.]" (ER-172 (emphasis added)). Appellant also alleges that it may have expected to realize profits in the form of "possible rental income" which would be derived if Appellant rented *the Units*. *See* (ER-172).

Similarly, Appellees have **no role or effort** in generating rental income for the Units. While Appellant is free to rent out the Units as it sees fit, there is no rental management agreement, rental pooling agreement, or property management agreement between Appellant and Appellees for either of the Units whereunder Appellees could feasibly be solely in control of the profitability of Unit 2406 and/or Unit 3202. Accordingly, Appellant cannot show that a security even exists in the first place.

### D.     The District Court Correctly Concluded that the Court Lacks Subject Matter Jurisdiction of Appellant's Remaining Claims Following the Dismissal of Count I and Count II of the FAC

The sole basis for federal subject matter jurisdiction asserted in the FAC is federal question jurisdiction pursuant to 28 U.S.C. § 1331 (for Counts I and II). *See* (ER-148). Subject matter jurisdiction for Appellant's remaining claims is entirely reliant on supplemental jurisdiction under 28 U.S.C. § 1367. With the dismissal of Counts I and II, the Court should decline to exercise jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367(c)(3).

34

Because the FAC suffered from incurable and fundamental defects, Appellant should not have been given further leave to amend. *See Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile."); *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) ("A district court's discretion to deny leave to amend is 'particularly broad' where the plaintiff has previously amended.").

## IX.    CONCLUSION

Because the District Court correctly concluded that Counts I and II of Appellant's FAC were time barred, and Counts III-V lacked supplemental jurisdiction, the District Court's Order should be affirmed.

DATED:  Honolulu, Hawaii, July 15, 2026.

/s/ *Maile S. Miller*
TERENCE J. O'TOOLE
MAILE S. MILLER
ERIC S. ROBINSON

Attorneys for Defendants-Appellees
TOWER KAUAI LAGOONS 9B, LLC;
TOWER KAUAI LAGOONS MEZZ, LLC;
TOWER KAUAI LAGOONS, LLC;
KAUAI LAGOONS GRAND AVENUE
PARTNERS, LLC; and TIMBERS
HAWAII REAL ESTATE LLC

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that pursuant to Fed. R. App. P. 32 (a)(7)(B) and Ninth Circuit Rule 32-1, the attached Answering Brief is proportionately spaced, has a typeface of Times New Roman 14-points or more, and contains 9,126 words.

DATED:  Honolulu, Hawaii, July 15, 2026.

/s/ Maile S. Miller
TERENCE J. O'TOOLE
MAILE S. MILLER
ERIC S. ROBINSON

Attorneys for Defendants-Appellees
TOWER KAUAI LAGOONS 9B, LLC;
TOWER KAUAI LAGOONS MEZZ, LLC;
TOWER KAUAI LAGOONS, LLC;
KAUAI LAGOONS GRAND AVENUE
PARTNERS, LLC; and TIMBERS
HAWAII REAL ESTATE LLC

## **STATEMENT OF RELATED CASES**

Counsel for Appellees TOWER KAUAI LAGOONS 9B, LLC; TOWER KAUAI LAGOONS MEZZ, LLC; TOWER KAUAI LAGOONS, LLC; KAUAI LAGOONS GRAND AVENUE PARTNERS, LLC; and TIMBERS HAWAII REAL ESTATE LLC are not aware of any related cases pending in this Court, as defined in Ninth Circuit Rule 28-2.6.

DATED: Honolulu, Hawaii, July 15, 2026.

*/s/ Maile S. Miller*
TERENCE J. O'TOOLE
MAILE S. MILLER
ERIC S. ROBINSON

Attorneys for Defendants-Appellees
TOWER KAUAI LAGOONS 9B, LLC;
TOWER KAUAI LAGOONS MEZZ, LLC;
TOWER KAUAI LAGOONS, LLC;
KAUAI LAGOONS GRAND AVENUE
PARTNERS, LLC; and TIMBERS
HAWAII REAL ESTATE LLC

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on the date noted below, the foregoing document was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

The undersigned hereby certifies that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATED:  Honolulu, Hawaii, July 15, 2026.

/s/ Maile S. Miller
TERENCE J. O'TOOLE
MAILE S. MILLER
ERIC S. ROBINSON

Attorneys for Defendants-Appellees
TOWER KAUAI LAGOONS 9B, LLC;
TOWER KAUAI LAGOONS MEZZ, LLC;
TOWER KAUAI LAGOONS, LLC;
KAUAI LAGOONS GRAND AVENUE
PARTNERS, LLC; and TIMBERS
HAWAII REAL ESTATE LLC